UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESDRAS NEHEMIAS ADJPOP VELASQUEZ,<br><br>Petitioner,<br><br>-v-<br><br>PAUL ARTETA *et al.*,<br><br>Respondents. | 26 Civ. 5519 (PAE)<br><br><u>OPINION & ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

On June 29, 2026, petitioner Esdras Nehemias Adjpop Velasquez ("Adjpop Velasquez"), a citizen of Guatemala who had illegally entered the United States three years earlier, was detained by U.S. Immigration and Customs Enforcement ("ICE" or "Respondents"), after and based on the filing of state criminal charges against him. That day, he petitioned for a writ of habeas corpus. Dkt. 1. On August 14, 2026, after the state charges were dismissed, Adjpop Velasquez filed an amended petition. Dkt. 21 ("Petition"). He there contends that his ongoing detention, which is discretionary under 8 U.S.C. § 1226(a), has been unlawful since August 12, 2026—the date the criminal charges were dismissed—because ICE lacked a basis to detain him. He seeks immediate release and injunctive relief barring his renewed detention, or, in the alternative, a bond hearing testing whether he presents a danger to the community or a flight risk. *Id.* ¶ 6.

The parties' dispute is narrow. All agree that Adjpop Velasquez's detention is governed by § 1226(a) and requires ICE to have had an individualized justification for taking him into custody. All agree that ICE had such a justification when it detained Adjpop Velasquez based on the pending state criminal charges—and ICE, in fact, acknowledged the need for such a

justification when, after taking him into custody, it served him with a "Notice of Custody Determination." All agree, too, that, under, § 1226(a), Adjpop Velasquez is entitled to a bond hearing, which he has not received. *See* Dkt. 26 ("Reply") at 1, 3–4; Dkt. 25 ("Opp'n") at 1–4. The parties disagree, however, whether ICE has articulated an adequate individualized justification for continuing to hold Adjpop Velasquez now that the state criminal charges have been dismissed. Adjpop Velasquez argues not, and that ICE's continued detention violates his constitutional right to due process.

For the reasons that follow, the Court grants in part and denies in part the Petition. The Court, finding that ICE's detention of Adjpop Velasquez remains justified, denies his petition for immediate release and associated injunctive relief. However, the Court orders the Government to promptly provide Adjpop Velasquez with a bond hearing before an immigration judge ("IJ").

## I. Background

### A. Arrival and Early Life in the United States

On or about March 20, 2023, Adjpop Velasquez, then age 34, entered the United States at or near Arizona without being admitted, inspected, or paroled, or encountering customs officials. Petition ¶ 23. Adjpop Velasquez is a bisexual, HIV-positive man. *Id.*

On October 4, 2024, Adjpop Velasquez filed an application for asylum with U.S. Citizenship and Immigration Services ("USCIS"). *Id.*; Dkt.6-8 at 2.

On or about March 17, 2026, USCIS served Adjpop Velasquez with a Notice to Appear ("NTA"), charging him, under 8 U.S.C. § 1182(a)(6)(A)(i), with being an inadmissible noncitizen "present" in the United States without "being admitted or paroled." Petition ¶ 24; Dkt. 7 ("Camacho Decl.") ¶ 6. USCIS also filed the NTA with the Department of Justice's Executive Office for Immigration Review ("EOIR"), thereby commencing removal proceedings against Adjpop Velasquez. *Id.* On March 25, 2026, EOIR issued a hearing notice, which

directed Adjpop Velasquez to appear for a master calendar hearing before an IJ on March 26, 2026. *Id.* ¶ 7. This hearing was later rescheduled for April 27, 2026. *Id.* ¶ 8.

On April 14, 2026, Adjpop Velasquez, *pro se*, contested his removability. *Id.* ¶ 9. On April 21, 2026, the Department of Homeland Security ("DHS") responded with "evidence supporting removability as charged in the NTA." *Id.* ¶ 10.

On April 27, 2026, Adjpop Velasquez attended his first master calendar hearing. Petition ¶ 24. IJ Jennifer Chung "sustained removability as charged in the NTA based on evidence filed by the DHS," and designated Guatemala as the country to which he would be removed. Camacho Decl. ¶ 11. Adjpop Velasquez requested a continuance to obtain counsel, *id*., and IJ Chung scheduled a second master calendar on June 29, 2026, and directed him to bring his asylum application to this hearing. Petition ¶ 24. In the following weeks, Adjpop Velasquez attempted to obtain counsel. *Id*.

### B. Criminal Arrest and ICE Encounter

Adjpop Velasquez alleges that, on or about May 6, 2026, his ex-boyfriend, Matthew Garcia, attacked him, and stole his phone to impede him from calling the police. *Id*. ¶ 25. Adjpop Velasquez alleges that during the altercation between the two, he was injured. *Id*. As a result, Adjpop Velasquez alleges he had "no choice but to flee" the scene and to go to a hospital, where he was treated for "bruises, contusions, and a swollen eye." *Id*. Adjpop Velasquez states he filed a police report against his ex-boyfriend and obtained an order of protection against him. *Id*. He further alleges that, while he was receiving treatment, his ex-boyfriend called the police and falsely accused him of abuse. *Id*. On the basis of that complaint, Adjpop Velasquez was arrested at the hospital. *Id*.

On May 7, 2026, a criminal complaint against Adjop Velasquez was filed in Bronx County criminal court, in a case captioned *People v. Esdras Velasquez*, No. B26623788. Dkt. 6-

3 ("Complaint"). It alleged that, on May 6, 2026, at about 6 a.m., Adjpop Velasquez had struck Garcia with a "large kitchen knife," and that Garcia sustained "a deep, bleeding laceration about [his] head area," necessitating treatment at a "local Bronx hospital," and that Garcia continued to experience "fear for [his] physical safety." *Id.* at 1–2. It brought four felony counts against him (two of attempted assault in the first degree and two of attempted assault in the second degree), two misdemeanor counts (one of assault in the third degree and one of criminal possession of a weapon in the fourth degree), and one violation, charging harassment in the second degree. *Id*. at 1.

That same day, ICE Enforcement and Removal Operations ("ERO") was notified of Adjpop Velasquez's arrest. Camacho Decl. ¶ 14. ICE ERO determined, based on a records check, that Adjpop Velasquez did not have a lawful immigration status and was in removal proceedings. *Id*. Accordingly, that day, ICE issued a warrant (or "I-200") for Adjpop Velasquez's arrest. Dkt. 6-4. It issued an immigration detainer, directed to the New York City Department of Corrections ("DOC") stating that DHS had determined that there was probable cause that Adjpop Velasquez was removable, and that:

> Consistent with the "policy of the United States to faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people," set forth in Executive Order 14159, Protecting the American People Against Invasion, DHS requests cooperation regarding the subject who: . . .
>
> is subject to the detainer provision of the Laken Riley Act and is required to be effectively and expeditiously taken into custody by DHS pursuant to 8 U.S.C. § 1226(c)(3); [and]
>
> otherwise poses a risk to national security, border security, or public safety.

Dkt. 6-5 at 1.

On May 8, 2026, DOC acknowledged receipt of ICE's detainer. Dkt. 6-6. It stated, however, that it would not maintain custody of Adjpop Velasquez for more than 48 hours after

his release on the state charges, nor provide ICE with information about the time of his release or facilitate an orderly transfer of custody to ICE at the time of his release. *Id.* Adjpop Velasquez was later released from DOC custody without notification to ICE. Camacho Decl. ¶ 17.

**C. Adjpop Velasquez's Initial Detention**

On June 29, 2026, ICE issued a second I-200, again stating that it had determined that there was probable cause to believe Adjpop Velasquez was removable from the United States. *Id.* ¶¶ 15, 18; Dkt. 6-7.

On June 29, 2026, Adjpop Velasquez attended his second master calendar hearing before IJ Chung in Manhattan. Petition ¶ 28; Camacho Decl. ¶ 20. He submitted an amended asylum application at the hearing, and IJ Chung set a date for an individual merits hearing on "August 10, 2027." Petition ¶ 28. At approximately 11:20 a.m., ICE officers arrived, identified themselves, positively identified Adjpop Velasquez as the person subject to the I-200 that had issued earlier that day, and took him to 26 Federal Plaza in New York, New York for processing. Camacho Decl. ¶ 20.

During processing, ICE determined that Adjpop Velasquez's detention was mandatory, under 8 U.S.C. §1226(c)(1)(E), based on the pending criminal charges. *Id.* ICE states that it took Adjpop Velasquez into custody based on its determination that he was a "threat to public safety," based in turn on his May 6 arrest and the pending criminal charges. Camacho Decl. ¶ 21. ICE served him with a Notice of Custody Determination, giving notice of ICE's decision to detain him and informing him of his right to seek a review by an IJ of the custody determination. *Id.* ¶ 22. Adjpop Velasquez stated he requested such review. *Id.*

On June 30, 2026, Adjpop Velasquez was transferred from 26 Federal Plaza to the Orange County Jail in Goshen, New York. *Id.* ¶ 23.

### D. Adjpop Velasquez's § 2255 Petition

On June 29, 2026, Adjpop Velasquez, proceeding *pro se*, commenced this action. Dkt. 1. That day, the Court set a briefing schedule and enjoined his removal from the United States pending a ruling on the petition. Dkt. 3. On July 9, 2026, respondents ("ICE") opposed the petition, Dkt. 11, attaching exhibits, Dkt. 6, and a declaration from ICE Deportation Officer Jose Camacho, Dkt. 7, as support. On July 8, 2026, petitioner's next friend requested a one-week extension, with respondents' consent, to obtain records germane to Adjpop Velasquez's reply, which the Court granted. Dkts. 13–14. On July 16, 2026, petitioner's next friend requested, again on consent, a further extension until July 30, 2026, Dkt. 15, which the Court granted. Dkt. 16. On July 30, 2026, petitioner's next friend requested a further extension until August 14, 2026, again on consent, Dkt. 17, which the Court again granted, Dkt. 18.

On August 14, 2026, Adjpop Velasquez, now assisted by *pro bono* counsel, filed an amended petition. Dkt. 21. On August 15, 2026, the Court set a briefing schedule and directed the parties to address whether the case was materially distinguishable from *Rivas Reyes v. Mullin*, No. 26 Civ. 4334 (PAE), 2026 WL 1707170 (S.D.N.Y. June 12, 2026). Dkt. 23. On August 18, 2026, Respondents opposed the amended petition, attaching a new "Notice of Custody Determination" dated August 17, 2026, and a declaration from ICE Deportation Officer Alexander Thompson. Dkt. 25. On August 20, 2026, Adjpop Velasquez replied. Dkt. 26.

### E. The Dismissal of the State Criminal Charges on August 12, 2026 and Adjpop Velasquez's Ensuing ICE Detention

On August 12, 2026, the state charges against Adjpop Velasquez were dismissed after a hearing in his criminal case. Petition ¶ 38. On August 14, 2026, the Bronx Criminal Court issued a certificate of disposition, reflecting the dismissal. Dkt. 21-3.

On August 17, 2026, ICE learned, from the United States Attorney's Office in this District, that the criminal charges had been dismissed. Dkt. 25-1 ("Thompson Decl.") ¶ 7. ICE represents that, that day, after determining that Adjpop Velasquez's continued detention was subject to detention under § 1226(a), it made "an individualized initial custody determination as required by § 1226(a) and made a discretionary determination that [Adjpop Velasquez] would remain detained pending his removal proceedings." *Id.* ¶ 9. It states that Adjpop Velasquez was interviewed during this process, and that, after the interview, it issued Adjpop Velasquez a form I-286, or Notice of Custody Determination. *Id*. Adjpop Velasquez refused to sign the form. *Id*.

Adjpop Velasquez's account of the events of that day is broadly in accord. Dkt. 26-1 ("Adjpop Velasquez Decl.") ¶ 3. He states that he was presented with the form I-286, asked if he wanted to sign it, and that he declined to do so until speaking with counsel. *Id*. ¶¶ 6–10. He faults ICE, however, for ostensibly not telling him that ICE "would be evaluating the basis for [his] detention"; for not giving him an opportunity to consult with counsel before ICE made that evaluation; for not asking him about his state arrest, his asylum application, or his ties to the local community; and for not giving him an opportunity to explain why he should not be released. *Id*. ¶¶ 4–7, 8, 11. He states he understood the ICE officer, in telling him that he was free to sign or not to sign the form I-286, to be "talking to [him] about [his] asylum case." *Id*. ¶ 7.

The form I-286, signed by ICE Officer Joseph T. Pujol, states that he had determined that, pending a final administrative determination, Adjpop Velasquez was to be detained. Dkt. 25-2. It states that the contents of the form were read to Adjpop Velasquez" in Spanish by deportation officer "Lieneck" and that Adjpop Velasquez declined to sign. *Id*.; Thompson Decl. ¶ 9.

## II. Applicable Legal Standard

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *see also Trump v. J.G.G.*, 145 S. Ct. 1003, 1005–06 (2025).

## III. Discussion

### A. Did ICE Violate the Due Process Clause When it Detained Adjpop Velasquez Pursuant to § 1226(a)?

It is undisputed that ICE acted within its legal authority when it first detained Adjpop Velasquez under § 1226(c)(1)(E) based on his pending state criminal charges, including for assault. The parties dispute whether, after the dismissal of those charges, ICE, in issuing a second form I-286, conducted an individualized assessment under § 1226(a) whether to detain Adjpop Velasquez, so as to comport with the Due Process Clause. Because a discretionary custody determination by ICE is not judicially reviewable, *see* 8 U.S.C. § 1226(e), the pertinent inquiry is whether Adjpop Velasquez has shown that ICE failed to make an individualized determination—*i.e.* that it failed to exercise discretion—in detaining him, not whether that exercise of discretion was sound. *See Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025).

Under § 1226(a) and its implementing regulations, ICE officials, before detaining a noncitizen under that authority, must make an "individualized custody determination" and thereafter make available a bond hearing. 8 C.F.R. § 1236(d)(1); *see also Perez Guedez v. Catletti*, No. 26 Civ. 2463, 2026 WL 962575, at *2 (S.D.N.Y. Apr. 9, 2026) (quoting *Velesaca v.*

*Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)). The Second Circuit has held that, under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1979), ICE breaches that obligation when it makes a custody determination with no "individualized assessment." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). Accordingly, courts have found due process violations where ICE detains a noncitizen without "any reason." *Rivera Esperanza v. Francis*, 817 F. Supp. 3d 187, 197–99 (S.D.N.Y. 2025) ("Given the 'complete absence of any reason for Petitioner's arrest under Section 1226, either in the record or in the briefing,' this Court, like so many before it, finds that Mr. Rivera Esperanza's detention violated the Due Process Clause," *id*. at 198–99 (quoting *Tumba v. Francis*, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025)); *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (finding absence of discretion where petitioner contended she was detained pursuant to a new ICE policy to "detain individuals immediately after their appearance in immigration court"); *Villegas ex rel. Guzman Andujar v. Francis*, 815 F. Supp. 3d 248, 263 (S.D.N.Y. 2025) (finding ICE failed to conduct an individualized assessment when it "exercised *no discretion at all*"); *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025) (same, where there was no evidence of an individualized assessment as to petitioners "dangerousness or flight risk, or *any* kind of process at all sufficient to qualify as a valid exercise of discretion" (emphasis added)); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. Aug. 13, 2025) (same, where there was "no evidence suggesting that any kind of individualized determination was ever made" as to petitioner); *Rahman v. Catletti*, No. 26 Civ. 3054 (PAE), 2026 WL 1180138, at *2 (S.D.N.Y. Apr. 30, 2026) (finding individualized discretion exercised where petitioner had "not established that the decision to detain him was made without any exercise of discretion").

ICE has demonstrated an individualized justification here. It asserts that, since being alerted to the Adjpop Velasquez's May 6, 2026 arrest on state criminal charges, it has consistently viewed him as a threat to public safety, as corroborated by its contemporaneous actions. On May 7, 2026, ICE states, it assessed him to present such a threat. Camacho Decl. ¶¶ 13–18; Dkt. 6-5. As a result, that day, it issued a detainer for him, which stated that he "poses a risk to national security, border security, or public safety." *Id.* at 1. Likewise, before issuing a warrant for his arrest on June 29, 2026, ICE states, it again determined Adjpop Velasquez was a "threat to public safety." Camacho Decl. ¶¶ 21–22. It based that determination not *only* on the "pending criminal charges," but also on the facts underlying them, including that Ajdpop Velasquez had inflicted a "deep, bleeding laceration" on his partner, using a "large kitchen knife." Dkt. 6-3 at 2. ICE further represents that, promptly upon learning that the charges against Adjpop Velasquez had been dropped, so as to require a discretionary detention determination under § 1226(a), it "conducted an individualized initial custody determination," and "made a discretionary determination that [Adjpop Velasquez] would remain detained pending his removal proceedings." Thompson Decl. ¶ 9. The record does not afford any basis to discredit that representation, which accords with ICE's real-time actions.

This case is thus far afield from ones in which courts have found that ICE failed to conduct any kind of individualized assessment. *See, e.g.*, *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (finding absence of discretion where petitioner contended she was detained pursuant to a new ICE policy to "detain individuals immediately after their appearance in immigration court"); *see also Villegas ex rel. Guzman Andujar*, 815 F. Supp. 3d at 263 (same); *Valdez v. Joyce*, 803 F.Supp.3d 213, 217–19 (S.D.N.Y. 2025) (same); *Barco Mercado v. Francis*, 811 F.Supp.3d 487, 503–04 (S.D.N.Y. 2025) (same); *Bernal Morales v. Joyce*, No. 26

Civ. 6723 (PAE), 2026 WL 2445050 (S.D.N.Y. Aug. 20, 2026) (same). To the contrary, ICE's discretionary determination here aligns with its actions in numerous cases, in which it has based individualized custody determinations, and/or lodged detainers in anticipation of pursuing immigration custody, on the basis of criminal charges—pending or past—against the non-citizen. *See, e.g.*, *Martinez-Lopez v. Reid*, No. 26 Civ. 2893 (PAE), 2026 WL 1133933, at *3–4 (S.D.N.Y. Apr. 27, 2026) (ICE exercised discretion when it detained petitioner following his recent arrest for criminal obstruction of breathing and harassment ); *Sharifzoda v. Orange Cnty. Jail*, No. 26 Civ. 2486, 2026 WL 851378, at *1 (S.D.N.Y. Mar. 27, 2026) (same where petitioner detained following recent arrest for "domestic violence-related assault"); *Li v. Noem*, No. 26 Civ. 989, 2026 WL 366849, at *1 (S.D.N.Y. Feb. 10, 2026) (same where petitioner detained following arrest for prostitution and drug possession); *Jimenez v. Joyce*, No. 26 Civ. 429, 2026 WL 251889, at *1 (S.D.N.Y. Jan. 30, 2026) (finding, where petitioner possessed numerous past convictions for drunk driving, ICE exercised discretion in effecting detention despite absence of new charges); *E.A.C.F. v. Areta*, No. 26 Civ. 3047, 2026 WL 1213414, at *4 (S.D.N.Y. May 4, 2026) (same). Salient here, courts have found ICE exercises its discretion even when its detention decision is based, in whole or part, upon dismissed or contested criminal charges. *Straker v. Jones*, 986 F. Supp. 2d 345, 356 (S.D.N.Y. 2013) (Engelmayer, J.) (petitioner who was initially detained pursuant to now-dismissed domestic-dispute charges was entitled to bond hearing but not release); *see also Raju Ahmed v. Raul Maldonado Jr. et al.*, No. 26 Civ. 3656, 2026 WL 2042849, at *5 (E.D.N.Y. July 15, 2026) (ordering bond hearing rather than outright release where petitioner who was detained pursuant to now-dismissed felony impersonation charge contested remaining charges); *Guachambala v. Lyons*, No. 26 Civ. 1835, 2026 WL 686154, at *2 (S.D.N.Y. Mar. 10, 2026) (same where evidence "suggests the Government may

have exercised some discretion in detaining Petitioner" based on outstanding criminal charge for drunk driving); *Rivas Reyes*, 2026 WL 1707170, at *3 (finding ICE exercised discretion where petitioner had a prior arrest for drunk driving whose disposition was uncertain, and a subsequent conviction for assault and disorderly conduct); *see also Vizhco Chunchi v. Francis*, No. 25 Civ. 10249, 2026 WL 249676, at *2 (S.D.N.Y. Jan. 30, 2026) (same where petitioner had prior arrest for robbery whose disposition was uncertain, and a recent arrest for possession of a controlled substance); *Quinteros Moran v. Joyce*, No. 25 Civ. 9645, 2025 WL 3632895, at *4 (S.D.N.Y. Dec. 15, 2025) (same where recent arrest marked petitioner's "tenth encounter" with law enforcement in three years).

Particularly apposite is *Rahman v. Catletti*. There, the petitioner had unlawfully entered the United States, was served with a notice to appear, was directed to appear before an IJ at a specific date, and was taken into custody and served with an arrest warrant, on the basis of a prior arrest for assault in the second degree, but the charge had been dismissed pursuant to a *nolle prosequi*. 2026 WL 1180138, at *1–2. Notwithstanding the dismissal, the district court held, ICE exercised discretion by detaining the petitioner based, in part, on his prior arrest. *Id*. Likewise, here, the dismissal of the criminal charges against Adjpop Velasquez did not preclude ICE from drawing upon the fact of these charges, and the underlying allegations, in making a discretionary and individualized custody determination as to him. *See id*. at *2 n.4.

Adjpop Velasquez makes several arguments to the contrary. None are persuasive.

First, he disputes that ICE considered individualized factors relating to him. Reply at 2. He bases that claim is his assertion that ICE was precluded from considering anything about the criminal charges against him after they were dropped. *Id*. at 3. That is legally wrong, however. *See Reid v. Decker*, No. 19 Civ. 8393, 2020 WL 996604, at *12 (S.D.N.Y. Mar. 2, 2020) ("[T]he

Second Circuit has made clear that in granting or denying discretionary relief, IJs may consider the conduct underlying criminal charges, even if the charges did not result in a conviction" (citing *Wallace v. Gonzales*, 463 F.3d 135, 139 (2d Cir. 2006)); *see also Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (finding immigration authorities are not limited to considering only "criminal *convictions* in assessing whether an alien is a danger to the community" (emphasis added)). And ICE represents that it made an individualized assessment as to him after the charges were dropped, Thompson Decl. ¶ 9, which is corroborated here by the agency's preceding conduct. Indeed, it represents, even before the charges were dropped, it had considered the conduct underlying those charges in finding Adjpop Velasquez a danger to the public. Camacho Decl. ¶ 21. In light of ICE's demonstrated individualized attention to Adjpop Velasquez dating back to early May, there is no basis to second-guess its representation that it again made an individualized determination as to him after the charges were dropped.[1]

Second, Adjpop Velasquez contends that ICE procedurally erred in that, before making its custody determination, it did not ask him "any substantive questions," give his counsel advance notice, or state that it had "considered the impact of dismissal of [his] criminal charges." Reply at 4. But, as courts have found, provided that ICE makes an individualized custody determination, ICE has wide latitude in developing facts supporting its exercises of discretion under § 1226(a). *See Vizhco Chunchi*, 2026 WL 249676, at *2. ICE is not required to hold an "adversarial hearing-like process" to demonstrate the exercise of discretion. *Lopez Benitez*, 795 F. Supp. 3d at 494, or to "engage in a painstaking review of every facet of a noncitizen's history

[1] Independent of the conduct underlying the criminal charges, Adjpop Velasquez's own petition admitted to fleeing the scene of the May 6, 2026 altercation, Petition ¶ 25, conduct which could support a detention determination based on a heightened risk of flight.

and characteristics" before electing to detain him under § 1226(a). *Id*. at 494–95; *Fuenmayor Ochoa v. Mullin*, No. 26 Civ. 3136, 2026 WL 1162429, at *2 (S.D.N.Y. Apr. 29, 2026) (same).

Third, Adjpop Velasquez argues that his case is controlled by this Court's decision in *Yao v. Almodovar*, 813 F. Supp. 3d 461 (S.D.N.Y. 2025), not by cases in which discretionary ICE detention decisions were upheld based on the petitioner's arrest. *See, e.g.*, *Rivas Reyes*, 2026 WL 1707170, at *4; *Rahman*, 2026 WL 1180138, at *1; *Martinez-Lopez*, 2026 WL 1133933, at *3–4. *Yao*, however, is readily distinguished. Yao had illegally entered the United States and was released on his own recognizance but was later detained by ICE during a routine check-in. *Yao*, 813 F. Supp. 3d. at 465. The Court found a due process violation based on ICE's concession that it had not "exercised any discretion at all" in detaining him, and thereby ordered Yao's immediate release. *Id*. at 475–76. Here, in contrast, ICE on multiple occasions determined that Adjpop Velasquez was a public safety threat and lodged a detainer, based on his prior arrest. That is the epitome of an individualized basis for a custody determination. *See Martinez-Lopez*, 2026 WL 1133933, at *4 (ICE exercised discretion in detaining petitioner "based on the individualized circumstances presented by his arrest"); *Rahman*, 2026 WL 1180138, at *2. And unlike in *Yao*, ICE, far from conceding it did not exercise "any discretion at all," has repeatedly represented the contrary. *Rahman*, *Martinez-Lopez*, and *Rivas Reyes*, are, therefore, far more apposite than *Yao*.

**B. Is Adjop Velasquez Entitled to a Bond Hearing?**

Adjpop Velasquez's entitlement to a bond hearing presents a separate issue.

Under § 1226(a), a noncitizen taken into custody based on an individualized determination is entitled to a prompt bond hearing consistent with due process "at which the Government bears the burden of proving, by clear and convincing evidence, that [he] is a danger to the community or a flight risk." *Guedez v. Catletti*, No. 26 Civ. 2463, 2026 WL 962575, at *2

(S.D.N.Y. Apr. 9, 2026). Under federal regulations, noncitizens "detained under § 1226(a) receive bond hearings *at the outset of detention*." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)) (emphasis added); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579–80 (2022) (same).

Here, it is undisputed that ICE has failed to provide such a hearing since it took Adjpop Velasquez into custody. *See* Opp'n at 1; Reply at 5. And ICE does oppose furnishing him such a hearing. *See* Opp'n at 6 ( "[T]he government does not oppose the Court ordering [a bond hearing before an immigration judge]."). Because "the sole process that Petitioner was improperly denied was the ability to obtain a bond hearing," a bond hearing is the "appropriate remedy." *E.A.C.F.*, 2026 WL 1213414, at *3; *see, e.g.*, *Jimenez*, 2026 WL 251889, at *1 (bond hearing, not release, was "appropriate remedy" where noncitizen was detained based on prior convictions); *Perez Guedez*, 2026 WL 962575, at *2 (ordering bond hearing where individualized assessment was made "despite ICE's (incorrect) understanding that its detention of Petitioner was mandatory"); *Ruiz v. Trump*, No. 26 Civ. 12, 2026 WL 323254, at *10 (D. Vt. Feb. 6, 2026) (ordering bond hearing where petitioner, whose charges were dismissed prior to detention under § 1226(a), asserted Due Process violation).

At the bond hearing, ICE will be at liberty to establish—and Adjpop Velasquez will be at liberty to refute—that he presents a danger to the community and/or a risk of flight. *See, e.g.*, *Sharifzoda*, 2026 WL 851378, at *1–2 (finding petitioner detained under § 1226 and ordering bond hearing, where ICE exercised discretion to detain petitioner based on arrest for domestic violence); *Guachambala*, 2026 WL 686154, at *2–3 (same where ICE detained petitioner based on pending drunk driving charges); *Gunduzalp*, 2026 WL 948736, at *3–4 (same where ICE detained petitioner based on receiving tip that he posed public safety risk).

## CONCLUSION

For the above reasons, the Court denies Adjpop Velasquez's petition for a writ of habeas corpus, insofar as the Petition seeks immediate release or associated injunction relief, but grants the petition insofar as it seeks a bond hearing.

By **September 7, 2026,** an IJ shall hold a bond hearing for Adjpop Velasquez, at which the Government shall bear the burden of proving, by clear and convincing evidence, that Adjpop Velasquez is a danger to the community or a flight risk. In determining whether to grant bond, the IJ shall consider the sufficiency of alternatives to imprisonment, including but not limited to release on recognizance and electronic monitoring. In determining the amount of any bond imposed, the IJ shall consider Adjpop Velasquez's ability to pay. Within 72 hours of the bond hearing, the Government shall file a letter on the docket of this case stating the outcome of the bond hearing. It shall also promptly order a transcript or recording of the hearing and file such on the docket.

SO ORDERED.

Paul A. Engelmayer
PAUL A. ENGELMAYER
United States District Judge

Dated: August 27, 2026
New York, New York